IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

KAREN KLINE,

    Plaintiff *Pro Se*,

vs.                                                                                    No. CIV 00-0495 JC/WWD

CITY OF SANTA FE, SANTA FE
POLICE DEPARTMENT, JUDGE
FRANCES GALLEGOS, OFFICER
JEROME SANCHEZ, OFFICER
"JOHN DOE," Name Unknown, and
ZONING OFFICER EDDIE GARCIA,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER came on for consideration of City Defendants' Motion to Dismiss I, filed April 27, 2000 *(Doc. 3)*; City Defendants' Motion to Dismiss II, filed September 11, 2000 *(Doc. 30)*; and Defendant Gallegos' Motion to Dismiss III, filed September 11, 2000 *(Doc. 32)*. The Court has reviewed the motions, the memoranda submitted by the parties and the relevant authorities. The Court finds that the motions are well taken and will be granted.

**BACKGROUND**

Plaintiff *pro se* Karen Kline alleges constitutional rights violations and state tort claims committed by Defendants allegedly arising from Plaintiff's failure to trim her shrubs. Plaintiff alleges that she was singled out for prosecution under a Santa Fe Zoning Ordinance requiring residents to keep trees and shrubs trimmed.

First, Plaintiff claims that she was cited by Defendant Eddie Garcia on March 24 and April 8, 1997 for failure to keep her shrubs clear of the sidewalk. *See* Amended Complaint at ¶12, filed September 7, 2000 *(Doc. 27)*. Plaintiff appeared in Municipal Court before Defendant Judge Francis Gallegos on May 5, 1997 where Judge Gallegos ordered Plaintiff to trim her shrubs, despite Plaintiff's claim that she was already doing so. *See id*. at ¶13. Arraignment was set for May 23, 1997. *See id.*

On May 23, 1997, Plaintiff "felt certain of suicide" and asked a neighbor to go to court in her stead. *Id.* at ¶14. Plaintiff then confided in an unidentified male that she was planning suicide, whereupon he advised her to file a bankruptcy petition. *See id.* at ¶ 15. Plaintiff claims that friends reported concerns about Plaintiff's safety to the Santa Fe Police Department on May 22 and 23, 1997. *See id.* at ¶17. In response, Plaintiff alleges that officers forced their way through her back gate and entered her home in order to perform a "welfare check." *See id*. at ¶ 18.

On May 25, 1997, Plaintiff mailed suicide letters to Defendants Gallegos and the Santa Fe Police department. *See* Amended Complaint at ¶ 19. Due to her distress over the forced entry into her home, Plaintiff then ate dozens of pills, funneled gas into her car, and got in. *See id.* A neighbor found her and Plaintiff was taken to St. Vincent Hospital, where she remained in the Adult Psychiatric unit. *See id.*

On May 27, 1997, one of Plaintiff's properties was sold in foreclosure, the suicide letters were mailed to the recipients, Defendant Gallegos issued a bench warrant for Plaintiff's arrest for "failure to comply with conditions of probation," and Plaintiff's Chapter 11 bankruptcy was filed. *See id.* at ¶20. Apparently acting on the bench warrant, Plaintiff was arrested by Defendant Officers Sanchez and Doe and taken from the hospital on May 28, 1997. *See id.* at ¶21. Plaintiff alleges she was held in an "inhumane facility" before being taken before Judge Gallegos on May 29, 1997. *See id*. at ¶23,

24. Plaintiff was released to the Hospital later that day. *See id.* at ¶26. The charges were dismissed without prejudice on July 22, 1997. *See id.* at ¶29.

Plaintiff further alleges that she was again singled out and cited for untrimmed shrubs on September 17 and 29, 1997. *See* Amended Complaint at ¶30. Neighboring homes were not cited until October 21, 1997, after Plaintiff complained about the unfair treatment. *See id.* at ¶33-34. Nevertheless, a summons was issued for Plaintiff to appear in court on November 21, 1997. *See id.* at ¶ 35. At the November hearing, a trial was set for March 26, 1998. *See id.* at ¶36. Again, the charges against Plaintiff were dismissed without prejudice in court on March 26, 1998. *See id.* at ¶39.

Based on her encounters with the Santa Fe Police Department, the City of Santa Fe, Judge Gallegos and the individual officers, Plaintiff alleges numerous violations of her constitutional rights, as well as state tort claims committed by Defendants. Plaintiff further claims that she has suffered injury which has materialized itself as a diagnosis of pernicious anemia in December 1998. *See* Amended Complaint at ¶40. Plaintiff also contends that she has since been diagnosed with Post Traumatic Stress Disorder. *See* Answer to Defendants' Motion for Summary Judgment II, filed September 22, 2000 *(Doc. 34)*. Defendants now seek dismissal of a number of Plaintiff's allegations for failure to state a claim under 12(b)(6).

**ANALYSIS**

**I.     Standard**

In deciding a motion to dismiss for failure to state a claim under FED. R. CIV. P. 12(b)(6), the court must accept all well-pleaded allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F. 3d 1381, 1384 (10th Cir. 1997). Dismissal may be granted only when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See id.*; *Conley v. Gibson*, 355 U. S. 41, 45-46 (1957). The function of the court on a 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted. *See Miller v. Glanz*, 948 F. 2d 1562, 1565 (10th Cir. 1991).

A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). The *Haines* rule means that if a court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, or his unfamiliarity with pleading requirements. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A pro se complaint can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). However, the broad reading of the complaint does not relieve the pro se plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based. *See Hall, 93*5 F.2d at 1110.

**II.     Discussion**

   **A.     Motion to Dismiss I**

City Defendants' Motion to Dismiss II supersedes City Defendants' Motion to Dismiss I. *See* Memorandum in Support of Motion to Dismiss II at 2, filed September 11, 2000 *(Doc. 31)*. Accordingly, City Defendants' Motion to Dismiss I is moot.

   **B.     Motion to Dismiss II**

City Defendants' Motion to Dismiss II seeks to dismiss a variety of Plaintiff's claims against the City of Santa Fe, Santa Fe Police Department, Judge Frances Gallegos, Officer Jerome Sanchez and Zoning Officer Eddie Garcia. Each of Defendant's arguments will be addressed in turn.

      **1.     State Law Claims**

Governmental entities and public employees acting within the scope of duty are immune from liability for any tort except as specifically waived by New Mexico Tort Claims Act (NMTCA). *See* NMSA 1978, § 41-4-4. The NMTCA sets a two-year statute of limitations in which Plaintiff can commence a claim based on state tort law. The limitations period for the NMTCA is found in NMSA 1978 § 41-4-15 which provides:

> Actions against a governmental entity or public employee for torts shall be forever barred, unless such an action is commenced within two years after the date of occurrence resulting in loss, injury or death, except that a minor under the full age of seven years shall have until his ninth birthday in which to file. This subsection applies to all persons regardless of minority or other legal disability.

NMSA 1978 § 41-4-15(A). Defendant argues that the occurrence resulting in loss alleged in Plaintiff's Amended Complaint was the allegedly wrongful citation issued for Plaintiff's untrimmed shrubs. *See* Motion to Dismiss II at 10, filed Sept. 11, 2000 *(Doc. 31)*. The first citation for

untrimmed shrubs occurred on March 24, 1997. A second citation was issued on April 8, 1997. *See* Amended Complaint, ¶ 5, filed September 7, 2000 *(Doc. 28)*. Accordingly, the Plaintiff knew of the alleged violation of her rights as early as March 24, 1997. Plaintiff's Amended Complaint further alleges that she was handcuffed and transported from a locked hospital facility to the Santa Fe County Detention Center on May 28, 1997. *See* Amended Complaint at ¶21. Therefore, Defendants argue that the latest Plaintiff became aware of her injuries and/or loss was May 28, 1997.

A line of New Mexico case law has held that under the Tort Claims Act, the limitation period commences "when an injury manifests itself and is ascertainable rather than when the wrongful or negligent act occurs." *Long v. Weaver*, 105 N.M. 188, 191 (Ct. App.1986)(emphasis omitted). This line of cases developed from medical malpractice actions where the injury was not immediately apparent. It was decided that the statute of limitations could not begin to run until the injury was sustained. Thus, the New Mexico courts determined that under the Tort Claims Act, an injury is "sustained" when the harmful effect first manifests itself and becomes physically ascertainable. *See Peralta v. Martinez*, 90 N.M. 391, 394 (Ct. App.1977). Apparently applying this rationale, Plaintiff asserts that she did not learn the extent of her injuries until 1999, when she was diagnosed as suffering from pernicious anemia, or 1998, when she was diagnosed with post traumatic stress disorder. *See* Answer to Motion to Dismiss II, filed September 25, 2000 *(Doc. 34)*. Therefore, Plaintiff contends that her tort claims were timely filed.

However, the term "ascertainable" is used in those cases where the injury is inherently unknowable as there can be no cause of action until there has been resulting injury. *See Bolden v. City of Corales*, 111 N.M. 721, 721 (Ct. App. 1990). However, this case is distinguishable from those medical malpractice cases where the injury does not evidence itself until long after the

occurrence of the negligent act. Plaintiff was immediately aware of any potential harm she had suffered. In fact, Plaintiff alleges that her suicide attempt in jail was a symptom of her undiagnosed pernicious anemia. *See* Answer to Motion to Dismiss No. II *(Doc. 34)*. That the full extent of the injury was not known does not affect the running of the statute of limitations. *See Crumpton v. Humana, Inc.*, 99 N.M. 562, 661 P.2d 54 (1983). Furthermore, it is not required that all the damages resulting from the negligent act be known before the statute of limitations begins to run. *See Bolden v. City of Corales*, 111 N.M. 721, 722 (Ct. App. 1990). Thus, once plaintiff suffers loss or injury, the statute begins to run. *See Aragon & McCoy v. Albuquerque Nat'l Bank*, 99 N.M. 420, 425 (1983)(finding that the period of limitations began to run when an "occurrence resulting in loss" took place). Accordingly, the Court finds that despite Plaintiff's claim that her injuries were not diagnosed until 1998 and 1999, all tort claims under the NMTCA were forever barred after May 28, 1999 when she knew or should have known that Defendants committed the state law torts which caused her to suffer suicidal ideation. Therefore, Plaintiff cannot seek recovery for such torts in the present action, which was not commenced until March 13, 2000. *See* Complaint at 1 *(Doc. 1)*. Defendants' motion to dismiss is therefore granted as to Plaintiff's state law tort claims for malicious abuse of process, assault, battery, false arrest, false imprisonment, malicious prosecution and intentional infliction of emotional distress.

### 2.     **Eighth Amendment Claim for Cruel and Unusual Punishment**

In her Amended Complaint, Plaintiff states a claim for violation of her Eighth Amendment right against "cruel and unusual punishment." *See* Amended Complaint at ¶ 73. Defendants argue that Plaintiff fails to state a claim for relief because the Eighth Amendment proscription against cruel and unusual punishment does not apply to pre-trial detainees. This Court agrees. The Tenth Circuit

has stated, "the critical juncture is conviction, either after trial, or ... by plea, at which point the state acquires the power to punish and the Eighth Amendment is implicated." *Berry v. City of Muskogee, Oklahoma*, 900 F.2d 1489, 1493 (10th Cir. 1990).  In this case, Plaintiff was never convicted, nor did she plead to any charges.  To the contrary, Judge Gallegos dismissed the charges against her.  *See* Amended Complaint at ¶ 39 and 49. Accordingly, Defendants' motion to dismiss Plaintiff's allegations of cruel and unusual punishment will be granted.

### 3. Fourteenth Amendment Procedural Due Process Claim

Defendants also move to dismiss Plaintiff's Fourteenth Amendment Procedural due process claim.  Specifically, Plaintiff alleges that the Municipality was obliged to "afford her some kind of sentencing hearing prior to arrest for not complying with probation." *See* Amended Complaint at ¶ 47. However, Supreme Court precedent makes clear that a state actor's random and unauthorized deprivation of procedural due process cannot be challenged under 42 U.S.C. § 1983 so long as the state provides an adequate post-deprivation remedy. *See Albright v. Oliver*, 510 U.S. 266, 283 (1994) (J. Kennedy, J. Thomas concurrence) (*citing Parratt v. Taylor*, 451 U.S. 527, 535-544 (1981)); *Hudson v. Palmer*, 468 U. S. 517, 533-536 (1984)(An unauthorized intentional deprivation of property by a state employee "does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available).  Here, Defendants contend that, with respect to her deprivation-of-liberty claim, the New Mexico Tort Claims Act provides Plaintiff with a post-deprivation remedy sufficient to satisfy Plaintiff's right to due process.

In procedural due process claims, what is unconstitutional is the deprivation of a constitutionally protected interest without due process of the law. *See Zinermon v. Burch*, 494

U.S.113, 125 (1990). In order to determine whether there is a constitutional violation, it is necessary to ask what process the State provided, and whether it was constitutionally adequate. *See id.* at 126. In order to prove a claim for denial of procedural due process, the plaintiff must plead and prove that a post-deprivation remedy is not available. *See Bass v. Robinson*, 167 F. 3d 1041,1049-50 (6th Cir. 1999).

In this case, a pre-deprivation hearing was impracticable. In addition, as Defendant argues, a post-deprivation remedy is available to Plaintiff because she may sue Defendant under section 41-4-12 of the New Mexico Tort Claims Act. Section 41-4-12 provides that immunity does not apply to liability for "personal injury, bodily injury . . . or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process ...." NMSA 1978 §41-4-12. Finally, Plaintiff failed to plead the absence of an adequate post-deprivation hearing.

Because there is a post-deprivation remedy available to Plaintiff, the Court will dismiss Plaintiff's procedural due process claim. *See Hanson v. Hancock County Mem l Hosp.*, 938 F. Supp. 1419 (N.D. Iowa 1996) (meaningful post-deprivation remedy adequate, so no viable due-process claim).

### 4. Section 1983 Claims based on the Violation of State Law

In order to state a claim under § 1983, Plaintiff must allege that she 1) was deprived of a right of interest secured by the Constitution and laws of the United States; and 2) the deprivation occurred under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Harris v. Champion*, 51 F.3d 901, 909 (10th Cir. 1995). A plaintiff may not found a § 1983 claim on violations of state law. *See Romero v. Board of County Commissioners*, 60 F.3d 702, 705 (10th Cir. 1995); *Jones v. City and County of Denver*, 854 F.2d 1206, 1209 (10th Cir.1988) (a violation of state law, by itself, does not

9

rise to the level of a federal constitutional deprivation, and, thus, is not cognizable under § 1983). Defendants' motion to dismiss Plaintiff's § 1983 claims based on the violation of New Mexico state law and the Municipal Court Rules will be granted.

### 5.     Section 1983 Claims against the Santa Fe Police Department

The Tenth Circuit has stated that police departments are not suable entities under § 1983, because they lack legal identities apart from the municipality. *See Ketchum v. Albuquerque Police Dept.*, No. 91-200, 1992 WL 51481(10th Cir. 1992) (unpublished opinion citing *Martinez v. Winner*, 771 F.2d 424, 443 (10th Cir. 1985)). Accordingly, the New Mexico District Court has consistently held that a police department is not a legal entity which may be held liable apart from a municipal corporation. *See e.g., Gonzales v. Morrow*, No. CIV 93-1216 (D.N.M. filed October. 25, 1994); *Romero v. City of Albuquerque*, No. CIV 94-832 (D.N.M. filed October. 4, 1994); *Flores v. City of Albuquerque*, No. CIV 92-46 (D.N.M. filed May 28, 1993); *Atencio v. City of Albuquerque*, No. CIV 91-57 (D.N.M. filed August. 27, 1991); *Howard v. City of Albuquerque*, No. CIV 91-1019 (D.N.M. filed July 12, 1991). The Court will therefore dismiss Plaintiff's § 1983 claims against the Santa Fe Police Department.

### 6.     Section 1983 Punitive Damages Claim against the City of Santa Fe and the Individual Defendants in their Official Capacities

Defendants are correct in stating that the City of Santa Fe is immune from suit for punitive damages under §1983. *See City of Newport v. Fact Concerts, Inc.*, 453 U. S. 247, 271 (1981). Likewise, because suits against government officials in their official capacity are treated as suits against the government itself, *see Brandon v. Holt*, 469 U.S. 464, 471-73 (1985) and *Watson v. City of Kansas City*, 857 F.2d 690, 695 (10th Cir.1988), punitive damages are not available against the

individuals in their official capacities. Accordingly, Defendants' motion to dismiss Plaintiff's claims for punitive damages against the City of Santa Fe and against the individual defendants in their official capacities will be granted.

### C. Motion to Dismiss III

In Defendants' third motion to dismiss, Judge Frances Gallegos moves for dismissal of all claims against her on the basis of absolute judicial immunity. Judicial immunity provides absolute immunity from civil liability for acts performed in a judge's judicial capacity. *See* Sc*hepp v. Fremont County, Wyo.*, 900 F.2d 1448, 1451 (10th Cir.1990). Judicial immunity is immunity from suit, not just the assessment of damages. *See Mireles v. Waco*, 502 U.S. 9, 11 (1991).

To determine whether an act is judicial, the Court looks to the nature and function of the act, not the act itself. *See Mireles v. Waco,* 502 U.S. at 13. Specifically, the Court should look to 1) whether the act is one normally performed by a judge; and 2) whether the parties dealt with the judge in her judicial capacity. *See Mireles*, 502 U.S. at 11-12.

In this case, Plaintiff alleges that Judge Gallegos presided over a hearing arising out of a citation received by Plaintiff for untrimmed shrubs. *See* Amended Complaint at ¶ 13. At the hearing, Plaintiff alleges that Judge Gallegos asked Kline who she thought the judge was going to believe. *See id.* Judge Gallegos then ordered Plaintiff to trim her shrubs, setting arraignment for May 23. *See id.* Plaintiff further alleges that Defendant Gallegos issued a bench warrant for her arrest after Plaintiff sent a neighbor to the arraignment in her place. *See* Amended Complaint at ¶ 13. Plaintiff then alleges that she was shackled and taken before Judge Gallegos after a bench warrant was issued for her arrest. *See* Amended Complaint at ¶ 24. At the hearing, Judge Gallegos expressed that she did not know what to do with Plaintiff due to her illnesses. *See id* at ¶ 25. Judge Gallegos eventually ordered

her sent to the adult psychiatric unit, dismissed the charges against her and terminated the prosecution. *See id* at ¶¶ 26, 29.

Clearly, Judge Gallegos' acts were taken as part of her judicial capacity. As a judge, Judge Gallegos presides over legal disputes and cases before the court. As a party before the court, Plaintiff Kline dealt with Judge Gallegos in her capacity as a judge. Thus, Judge Gallegos was operating in her judicial capacity when she presided over Plaintiff's claim, ordered her sent to the adult psychiatric unit and dismissed the charges against her. The issuance of a bench warrant is a judicial function authorized by state and local laws. *c.f. Buckley v. Fitzsimmons*, 509 U.S. 259, 271 (1993)(issuance of a search warrant is a judicial act). Throughout the events cited by Plaintiff, Judge Gallegos was performing functions inherent in her position as a judge

Furthermore, judicial immunity is not overcome by allegations of bad faith or malice. *See Pierson v. Ray*, 386 U.S.547, 554, ("[I]mmunity applies even when the judge is accused of acting maliciously and corruptly"). Accordingly, despite Plaintiff's allegations of bias or malice against her, Defendant Gallegos nevertheless retains absolute judicial immunity. Defendant Gallegos' Motion to Dismiss III is therefore granted.

Wherefore,

**IT IS ORDERED** that City Defendants' Motion to Dismiss I, filed April 27, 2000 *(Doc. 3)* is **moot**.

**IT IS FURTHER ORDERED** that City Defendants' Motion to Dismiss II, filed September 11, 2000 *(Doc. 30)* is hereby **granted**.

**IT IS FURTHER ORDERED** that Defendant Gallegos' Motion to Dismiss III, filed September 11, 2000 *(Doc. 32)* is hereby **granted**.

DATED March 8, 2001.

*/s/ John Edwards Conway*
_____
**SENIOR UNITED STATES DISTRICT JUDGE**

Counsel for Plaintiff:

    Karen Kline, pro se
    Santa Fe, New Mexico

Counsel for Defendants:

    Luis Robles, Esq.
    French & Associates, P.C.
    Albuquerque, New Mexico